To please the court, my name is Michael Clough. I'm appearing on behalf of Mr. Wyman, who is in custody. This case is actually, I think, relatively simple. I want to begin by saying that there were three claims in the petition. I'm not going to talk at length about the restitution issue because I think it's actually pretty clear on the law. I'll answer questions on that at the court. I'm also not going to spend a lot of time on the question of right to present a defense because I think that's actually interrelated with the plea issue, which is, I think, the main issue before the court. My client, Mr. Wyman, was advised, obviously, that despite the fact he did not believe his conduct was unlawful, that if he went to trial, he was going to be convicted and that he was, therefore, better off pleading. And on that basis, he entered a plea, and I would point out that in that plea, there is a specific clause, which says the parties stipulate that there is a factual basis and that it is sufficient to support a guilty plea. You have to realize, though, I want to put it in our perspective, that we get these cases where people enter pleas, they're accepted, and then they want to withdraw them. And so we have those cases. And people are making the exact sort of opposite arguments that you're making right here. And when you're a judge and you're sitting there, and I've taken many pleas as a judge, it's like when someone keeps, like, peddling towards the back door, and I'm not this, I'm not that, and all, it's just like, then have your jury trial because you know some appellate court's going to look at it and say you strong-armed someone into a plea. And you really don't want to take pleas from people that you don't feel acknowledge that they're guilty. So that's the dilemma here. Right. Your Honor, I think that's actually a very fair question. And I think it goes without saying. Damned if you do and damned if you don't. Exactly. And what I would suggest, and I'm going to go in reversal because there's really two arguments that the government makes as to why the plea should have been accepted or should have been rejected. The first is about the voluntariness requirement, and the second, then, is about the question of the factual basis. I want to talk about the voluntariness and take exactly the issue you're raising. If I came before this court and I argued that because a U.S. attorney put a deadline on a case, that that was grounds for saying the plea was not voluntary, I guarantee you, I don't guarantee you, but I am pretty sure that you would not take my argument seriously. So, therefore, I think we can throw that argument. Secondly, if I came in and presented you exactly the facts of this case and said, Mr. Weinman thought that, based on what the attorney general or U.S. attorney had agreed to, that they would get a two-year sentence and it would be concurrent, and then I said, well, but he was confused, and, therefore, he should be allowed to withdraw the plea, I think the trial court would have denied his ability to withdraw the plea, and I think that this court would have pretty much summarily rejected it. So I throw out the voluntariness. Now, to go to the factual basis argument, I think the law in this circuit is absolutely clear on the factual basis. I think that if you read the transcript, the first and most important thing is that, in context, all of Judge King's analysis, he never once really asked the question of whether or not there's a factual basis independently of what Mr. Weinman is saying. Kagan. Which really brings me to my question, which is, could you determine that it is waste as a matter of law independently of what Mr. Weinman thought that his intended use of the material was? Well, in fact, that's exactly what the government argues. Well, I know. This is what it argues in the second position. But do you agree with that? I mean, that would be the question. Obviously, if the court could say, well, as a matter of law, this is waste, it doesn't matter that Mr. Weinman is saying in his plea colloquy, no, it's not waste, I have a use for it. So that really is the key question for both parties. But I – two things on that. First, I think that when we look at the standard for factual basis for a plea, it does not have to be sufficient to support a conviction. I mean, the law is clear on that. It just simply has to be sufficient to support a factual basis for the court to believe that the party was guilty. I'm sorry. Let me ask you. I agree with you. But let's turn this around. As I read the plea colloquy, could the judge reasonably have said no matter what this plea agreement says, this guy is maintaining his innocence. And I don't want to accept a plea from somebody who maintains his innocence for all the fears that Judge Callahan put forth. Is that an acceptable reading of this record? I think it is actually probably the most likely reading, and it's wrong. Mancinius makes clear you can't reject a plea on the basis of the fact that the – I mean, I think the case law is clear that the fact that a client or defendant thinks he's innocent and continues to maintain his innocence does not in and of itself in this circuit and generally support a rejection of a plea. But how does it go to voluntariness? Yeah. That's my next question, too. I'm sorry. How does it go to voluntariness? You know, we're not in the business of strong-arming people. If they keep saying I'm innocent, I'm innocent, but my lawyer says I have to do it and all of that, then you kind of go, like, I don't feel good about this. I don't really like sentencing innocent people. But that gets to the – there's a very long quote in Mancinius, which I quoted, I think, in both my reply and my brief, in which Mancinius explains exactly why people plead when they don't believe they're guilty. We know that's what they are. No, and we all understand that you can have offered pleas and, you know, no contest pleas in various places. My question is, could this judge reasonably have said, this is really not one of those. This is not a guy who says, I'm going to maintain my innocence, but this is too good a deal for me to pass up. This is a guy who really doesn't want to plead guilty. Could the judge get that out of this transcript? No, I don't think that's in the transcript. I think what's in the transcript – and let me say, obviously, I'm limited in the claims I can make regarding effective assistance of counsel. Obviously, Mr. Wyman was not adequately prepared for the plea colloquy, but if you look at what he said, what you've got is basically a defendant rambling on about his impressions in response to the judge's decisions. He's never specifically asked, Mr. Wyman, is this plea involuntary? And then most importantly, the judge never really allows either the U.S. attorney or defense counsel an opportunity to say, yes, there is a factual basis for this plea. This is a complicated client, though. This is not – I mean, I can spot this from the record. I can see this one a mile away. And he's – you know, I mean, he's got the hoarding issues. He's got all – you know, there's just – he's a complicated client. Absolutely. There's no question about that. But I guess the question would be – And then you have the combination of that he's claiming that he doesn't know certain things that are in the record, and then there's a mistake about the time, you know, the two years. That wasn't a mistake. I mean, it was just whether or not it was guaranteed. But that was actually what the U.S. attorney's recommendation would have most likely resulted in. But go back to the fact he's a complicated client. But the judge wasn't promising that, and so that came up in the record, too, as a possible – well, I thought that's what I was going to get, right? But, one, the record, I think, indicates that Mr. Wyman was advised of that before he had come in to plead, and he never once in the record says, I do not want to plead because of that. Do you want to save any time for rebuttal and just share with us? Yes, that's exactly what I was looking for. Okay. Thank you. Good morning. May it please the Court, Mark Williams, United States. I'd like to start with the guilty plea issue, if that's all right. I think Your Honor's correct. At the change of plea hearing, the Court was faced with a defendant who specifically denied committing three of the four elements of the offense. That's significant here because it's distinct from Encinas Flores. In that case, the defendant simply showed up, was asked seven questions on the record, two of which were repeats, and claimed that he was innocent. Here, the government proffered a factual basis in the plea agreement. The defendant went through point by point and refuted each piece of the government's offer of proof. The government said that there was waste material. The defendant said the lead was not waste material. And the government moved to another piece of waste and said, well, certainly, and the Court said certainly the defendant would admit something else on the property was waste. And the defendant still said, no, there was no waste. Does he have to admit that it's waste? In other words, he admitted the factual basis for the charges. No, Your Honor. His belief that it's waste, I think, is the second issue in the case. But your position on that is it doesn't matter what he believes. If I'm storing nuclear waste in my bathroom and I say, I didn't think that's really waste. It's a cool residue to keep. You'd still prosecute me under RCRA. So why does it matter whether he characterizes it as waste? He does admit that he's storing lead on his property. He does admit what you think is sufficient to establish the charges. Why isn't that enough? Because at the change of plea hearing under Rule 11, the Court needs to satisfy itself that there's a basis for the plea. The government attempted to do that by offering into evidence facts that would satisfy the Court that the elements have been established. Isn't the mens rea that he has to know that it's waste? Yes. So he has to know that it's waste. And then the determination of waste is a factual question, and at least in part on his intent, isn't it? It's in part on his intent, Your Honor. I think it goes too far to say that if a defendant simply intended to use materials on his property, but 20 years went by and those materials were never used, that the materials could not be considered waste. So we have a factor test of many different factors, but one of them would be whether the person is using it immediately as feedstock for some other process, things like that. So there is an intent element, right? Precisely. Under Hewer, there is an intent element. But because this is a general intent crime, intent can be proved with circumstantial facts, and that was precisely the case here. I thought the general intent nature of the crime just means that the government doesn't have to show he knows it's illegal or know that he needs to have a permit in order to store it. That's part of it. He'll have to show that he knew it was a waste and that he knew it was hazardous, right? That's right, Your Honor. What defense counsel was arguing leading up to trial is that there was a heightened mens rea. He stopped short of saying specific intent, but he wanted something more than general intent. And I think when the court goes through the record and sees the argument at the first status conference and then with respect to the motion eliminating on the expert, it becomes clear that the reason Dr. Morgan's testimony was offered was to negate intent. Now on appeal, this goes to the court. Why wasn't her testimony relevant? That concerns me because she was planning to say he has a collection, he's a hoarder, to him this is important, and the only thing else he had for his theory of defense was the wife and the daughter whose testimony was not very strong. Yes. Going to the second issue, there's really only two reasons that her testimony could have even been arguably relevant. One is to say that the defendant lacked the ability to know that he was storing items on his property. In other words, he couldn't. No, no. She said, I mean, it goes to his theory of defense was this was not waste. And if he doesn't know it's waste or if it's not waste, then he can't be convicted under this statute. And her testimony went directly to his theory to support his defense theory. I just don't see why that's not relevant. That goes to the second reason it could have been offered, Your Honor. Her testimony doesn't deal at all with whether the material was waste. Her testimony, if you look at the extra disclosure, was limited to the fact that he was hoarding things, that he was storing things. It doesn't deal at all with the nature of the things being hoarded. Well, but to the extent that whether it's waste, one factor is the intent of the person who has the collection, then it's certainly relevant as to that factor, isn't it? No, Your Honor, because she couldn't have testified why the defendant was storing the materials. That would have been hearsay testimony regarding defendant's statements. Well, her expert testimony was it was a collection and precious to him and hard for him to not hang on to it. That seems to be relevant to the question of how he thought of this material. Right. Which is irrelevant to the determination of whether the material was waste. Well, if he thought of the material that way, let's assume what she said is true. Yes. Is that a defense to this crime? No, it is not. Why not? Don't you have to show he knew it was waste? Yes. And I think we're saying two different things here. You have to know that it's waste, which is more than simply knowing you're storing something. And waste means abandoned, relinquished, or stored immediately prior to abandonment and relinquishment. I mean, it's a very specific intent element in what the definition of waste is. That's right, Your Honor. Under Rule 704, could she testify as to his intent? No. She couldn't have, Your Honor. She – that would have been prohibited mental state testimony under Rule 704. So she could not have gone as far as saying – But could she then – and we agree as to that. Could she have testified that he doesn't think this is waste? No. That would be similar – either diminished capacity evidence, he couldn't believe it was waste, or he didn't, which is a conclusion regarding his mental state as to an element of the crime. So either way, it would either have been – It's a question of whether it's waste or not to the extent that has an intent element. I mean, that's not the mens rea element of knowing that it's waste. It's a question of, is it waste? So in other words, if your defense is, I have a valuable collection of ammunition, which I am going to refill and sell, then it's not waste. So you don't even have a rick-rack cause of action at that point. That still could be waste, Your Honor. Value is not the determinative factor regarding waste. But our cases look at various factors in determining whether materials that you have on your property are waste or not, and certainly intended use is one of the factors we've looked at in safe air in other cases. And that's my point, Your Honor. Dr. Morgan absolutely could not have testified regarding the defendant's intended use of the items. That would have been introducing defendant's hearsay statements without him having to testify, which is why she was offered at trial. The defendant instead, because she was excluded, had to testify about why he intended to use the items. Well, precise too. Can we tell from this record? Is there a Rule 104 proffer? Can we tell from this record what she would have said had she been allowed to testify? Yes, Your Honor. That would be when the Court looks at her expert disclosure, which is included in the record here. And so she would have said what had she been allowed to testify? Her opinion was that the defendant suffered from obsessive-compulsive disorder that manifested itself by hoarding, that to ward off anxiety, things must be kept, and that he was in the process of trying to organize his items and get rid of them. That was it. He also said that he was keeping – Ed did not think he was keeping hazardous materials and doing anything illegal. And that would be the – That he has a collection, and that discarding any part of the collected materials or things caused a loss of personal identity. So to ward off anxiety, everything must be kept. That's right, Your Honor. And that would have been the 704 piece of it. That's his state of mind. That's his state of mind. Okay. But let's exclude that for a second. Why shouldn't – why couldn't she testify to the rest of it? Because it's irrelevant. The reasons that – Well, let's go back to Judge Yakuta's question. He says if it is a defense to this crime for him to say, oh, my God, I didn't think of this stuff as waste. I thought of this stuff as materials that I was keeping for a future useful purpose. Why wouldn't it be relevant for the jury to know that he was the kind of guy who thought everything was useful to keep for a future purpose? I think that's a somewhat complicated question, Your Honor, and I'll try to address each piece. You can give me an easy answer if you want. I'll do my best. The reason that's a complicated defense is because every defendant accumulating materials in lieu of disposing them will say that they intended to use them someday. So while that may be a defense, it's only marginally relevant about – Do they not get to make that defense, though, if that is their defense? They do, just not through an expert concluding that he was hoarding. Well, but it's a pretty bad defense generally, but it might be a plausible defense if you were a crazy person. And they – I don't want to be technical, but they wanted to put on an expert to say this guy was a crazy person. Well, let's say it has minimal relevance. Yes, Your Honor. Then it's an abuse of discretion standard. So if – am I understanding your argument that your best argument there is even though it has – it might have minimal – you're saying it doesn't have any relevance, but even let's say it does have minimal relevance, there are certain things that the expert can't testify to. Would a court be within the abuse of discretion saying it would have a likelihood to confuse the jury and that they would therefore consider it for intent, which they're not allowed to consider it for, and would that fall within abuse of discretion? I think that states the point very well, Your Honor. And it's a manifestly erroneous standard when the court talks about exclusion of this particular type of expert testimony, so it's a relatively high standard in this case. Any additional questions? All right. Thank you. Your time is over. Thank you. Expired, I guess, would be. I think the court's discussion questions have pointed to exactly the problem with this case. Mr. Wyman was in an absolutely no-win situation. His attorney tells him, you got a bad defense, you better plead. He tries to plead. The court says you can't plead. The government says that it was correct, that there wasn't a factual basis for the plea. Then Mr. Wyman, who's forced to go to trial, tries to argue at trial what he honestly believed, that he had a use for these things. With regard to the expert's testimony, I would suggest that, with all due respect, the U.S. attorney mischaracterized the 704 issue because what Morgan testified to, and it's laid out clearly on page 33 of my brief, was to a general standard with regard to obsessive-compulsive behavior. She was not necessarily testifying, and I would agree. She couldn't stand up there and say, Mr. Wyman had this mental state. She testified to how a person with obsessive-compulsive disorder could have these particular beliefs. That kind of testimony, expert testimony, I think is absolutely permissible as corroborative evidence of, in fact, what Mr. Wyman testified to. Also, with regard to the question of it being hearsay, this is not a case where the defendant didn't testify. Mr. Wyman testified at length. And so the expert's testimony would have corroborated Mr. Wyman's testimony. Was it a bad defense? I think we would all agree it probably was a bad defense. But particularly in light of the situation in which he tries to plead because his attorney probably advises him it's a bad defense, and he's denied that opportunity, I think that the second claim becomes very important. Before you sit down, I want to ask you one brief question. What sentence did Mr. Wyman, I'm just blanking on it, eventually get? Sixty months. Sixty months, I think it was. So if we were to give you relief on your first claim, your plea claim, what you're asking is that we send it back for the judge to sentence within the plea range? Yeah. Okay. And just to be clear, I didn't talk about the restitution issue. But I think based on precedent, it has to be sent back for the restitution issue because there's simply no relief. Can we just do that ourselves? Yeah. When we just, you know, excise the requirement to make payments while in prison, do we have to send it back to do that? I think you do because there was actually no record on it in the context of the judge's decision. I mean, it was never briefed. It was never argued. And the judge was clearly proceeding on a mistake in the summary. I'm saying let's assume we agree with you that we can't require him to make restitution payments while in prison. Oh, yeah, I'm sorry. Can we just do that ourselves? Yes. I think you could say that there is no record, but if it's being remanded. Thank you. Thank you. This matter will stand submitted.
judges: Callahan, Ikuta, Hurwitz